■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS PERPEPAJ, Appellant. [673 NYS2d 363] —Judgment, Supreme Court, New York County (Felice Shea, J.), rendered July 7, 1995, convicting defendant, after a non-jury trial, of burglary in the second degree, and sentencing him, as a second felony offender, to a term of 4 to 8 years, modified, on the facts, the conviction reduced to criminal trespass in the second degree, the sentence reduced to time served, and otherwise affirmed.

On the afternoon of October 2, 1994, Officer Sierra arrived at an apartment building located at 509 West 189 Street in Manhattan in response to a radio run. Noticing that one of the basement window panes was broken and the window guard had been removed, he entered the basement apartment, which was abandoned and empty. Officer Sierra saw broken glass on the ground outside the window and on the floor inside the building. Once inside, he saw defendant emerging from a back room. Officer Sierra ordered defendant to come out, and defendant complied. When they were back outside, he arrested defendant. In response to the officer's question as to his reason for being in the basement, defendant said he had gone inside "to get off", i.e., to do drugs. He admitted that he was not authorized to be there.

At the time of his arrest, defendant was carrying a knapsack containing 7 screwdrivers, a wrench, wire cutters, pliers, part of a socket wrench, a saw blade, black tape, a pen and a flashlight. Also found on his person were a hypodermic needle, a crack pipe and a cigarette pack containing heroin.

At trial, defendant did not deny that he had been in the basement unlawfully. His defense focused on the burglary charge. Specifically, he contended, as he does on appeal, that the People failed to prove that he entered the building with intent to commit a crime therein. We agree.

Defendant testified that he was a now-homeless drug addict who had previously used this abandoned apartment to use drugs since being thrown out of his parents' home two weeks before his arrest. The window allegedly was broken already when he got there. He asserted that he possessed the tools for car-stripping, not for burglary, and pointed to his numerous

convictions for the former crime (and his lack of convictions for the latter) to support this explanation.

Gregory Prendi, the superintendent, testified for the defense. He was acquainted with defendant because they attended the same church. Mr. Prendi acknowledged that many of the basement windows had been broken around the time of the incident, and that the porters had notified him about people trespassing in the basement. However, he could not remember specifically when the windows were broken or whether he had boarded them up before the day of defendant's arrest. He confirmed that the basement apartment contained nothing but some bathroom fixtures in various states of disrepair, and that a person entering the apartment could not gain access through it to the inhabited part of the building.

In determining whether a conviction is against the weight of the evidence, this Court must first decide whether "based on all the credible evidence a different finding would not have been unreasonable" (*People v Bleakley*, 69 NY2d 490, 495). If so, the court should "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People ex rel. MacCracken v Miller*, 291 NY 55, 62), and, if necessary, set aside the verdict.

A person is guilty of burglary in the second degree when it is proven beyond a reasonable doubt that he knowingly entered a building unlawfully with the intent to commit a crime therein, and the building is a dwelling (Penal Law § 140.25 [2]). Intent may be inferred from the circumstances (*People v Barnes*, 50 NY2d 375, 380).

Even if defendant is not found in possession of stolen property, intent to commit a crime has been inferred from the fact that the premises were ransacked (*supra,* at 378) or vandalized (*People v Irrizary*, 183 AD2d 630, *lv denied* 80 NY2d 895 [defendant broke window of coffee shop, kicked open locked door and created "a mess"]). Additional factors that support an inference of criminal intent include resisting arrest, which indicates consciousness of guilt (*supra,* at 630), and attempting to gain access to the apartment floors of the building (*People v Lambert*, 232 AD2d 225, *lv denied* 89 NY2d 925). None of these factors is present in the instant case.

Other factors held to be evidence of criminal intent, such as defendant's forcible entry onto the subject premises (*People v Rodriguez*, 144 AD2d 501), and possession of burglar's tools (*People v Mitchell*, 151 AD2d 699, 700, *lv denied* 74 NY2d 815 [defendant found hiding inside truck in locked parking garage,

with bag containing screwdriver and nightstick]), do militate against defendant in this case. In *Mitchell*, the People argue, mere unauthorized presence plus possession of burglar's tools sufficed to support a burglary conviction. However, unlike the defendant in *Mitchell*, the present defendant offered a persuasive alternate explanation of these facts. The fact that the superintendent was a friend of plaintiff's family lends some credibility to defendant's claim that he was not trying to burglarize the building, but instead using it as a temporary shelter. In addition, this case is distinguishable from *Rodriguez (supra)*, and *Irrizary (supra)*, in that the evidence was inconclusive as to whether defendant was the one who broke the window.

Defendant's burglary conviction is against the weight of the evidence. His bag of tools was the only evidence suggesting criminal intent. Moreover, his explanation for his actions was reasonable, supported by circumstantial evidence (the heroin on his person and the nature of his criminal record), and not contradicted by any evidence presented by the People. Accordingly, we reduce his conviction to criminal trespass in the second degree (Penal Law § 140.15). As defendant has already served the one-year maximum sentence that may be imposed for this Class A misdemeanor (Penal Law § 70.15 [1]), there is no need to remand this matter for resentencing. Concur—Rosenberger, Williams and Mazzarelli, JJ.

Milonas, J. P., dissents in a Memorandum as follows: Defendant was found guilty of burglary in the second degree following a nonjury trial. In order to set aside that verdict as against the weight of the evidence, as the majority does, an appellate court must look beyond whether there is legally sufficient evidence to support that verdict and evaluate, as did the factfinder, the weight to be accorded the credible evidence (*People v Bleakley*, 69 NY2d 490, 495). As noted by the majority, this analysis requires us to "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People ex rel. McCracken v Miller*, 291 NY 55, 62). Only "[i]f it appears that the trier of fact has failed to give the evidence the weight it should be accorded" should the appellate court set aside the verdict pursuant to CPL 470.20 (5) (*People v Bleakley, supra*, at 495). In undertaking such analysis, however, the reviewing appellate court must accord great deference to the factfinder's ability to "view the witnesses, hear the testimony and observe demeanor" (*supra*, at 495). Thus, as we have previously observed, the factfinder's credibility determinations "should not be disturbed unless manifestly erroneous and so plainly

unjustified by the evidence that rejection is required in the interest of justice" (*People v Corporan*, 169 AD2d 643, *lv denied* 77 NY2d 959).

In my opinion, this standard has not been met, and I therefore would affirm the judgment of conviction. While defendant's account of his presence in the basement was not an "outlandish" one (*People v Jenkins*, 213 AD2d 279, *lv denied* 85 NY2d 974), the factfinder had the unique opportunity to hear and observe him give this account and then to weigh that testimony against the totality of the circumstances in which defendant was found, as set forth by the majority. In particular, the evidence included that, when found in the basement, defendant was wearing a knapsack that contained seven screwdrivers, a wrench, wire cutters, pliers, part of a socket wrench, a saw blade, black tape and a flashlight. According to the arresting officer, these are tools typically used in burglary and theft-related crimes. Under all the circumstances, the factfinder was warranted in rejecting defendant's explanation for his presence and concluding that he possessed the requisite intent to commit a crime on the premises (*see, e.g., People v Delcarpio*, 220 AD2d 341, 342, *lv denied* 87 NY2d 920).