OPINION OF THE COURT
Louis L. Nock, J.
Defendant Julio Morales moves for an order, pursuant to Criminal Procedure Law § 440.10, to vacate a judgment entered against him on July 16, 1998 convicting him of Penal Law § 220.03, criminal possession of a controlled substance in the seventh degree, a class A misdemeanor, upon his plea of guilty to that charge that day.[1] The People oppose defendant’s motion.
Background
Defendant, a citizen of the Dominican Republic, has been a lawful permanent resident of the United States since July 1, 1997. On May 7, 1998, defendant was arrested for Penal Law § 220.39 (1), criminal sale of a controlled substance in the third degree — a class B felony; and was charged with commission of that crime by felony complaint dated the following day — May 8, 1998. On July 16, 1998, defendant pleaded guilty to the class A misdemeanor of Penal Law § 220.03, criminal posses *1092 sion of a controlled substance in the seventh degree, receiving a sentence of time served. Defendant was represented by counsel.[2] Defendant’s codefendant, Pedro Leonardo, represented by separate counsel, pleaded guilty to Penal Law § 240.20, disorderly conduct, a mere violation, on November 5, 1998, receiving, simply, a conditional discharge. On or about July 17, 2013, defendant was served with a notice to appear for removal proceedings under section 240 of the United States Immigration and Nationality Act (INA) (8 USC § 1229a) by virtue of his aforesaid class A misdemeanor criminal guilty plea.[3]
Discussion
The crux of defendant’s argument on this motion is that his attorney at the time of his guilty plea affirmatively misadvised him regarding the immigration consequences of a class A misdemeanor criminal guilty plea to Penal Law § 220.03, and that such misadvice constituted ineffective assistance of counsel. Specifically, defendant attests that his prior counsel affirmatively misinformed him that a plea of guilty to the class A misdemeanor criminal charge of criminal possession of a controlled substance in the seventh degree would not render him subject to removal proceedings by the U.S. Immigration and Naturalization Service. Defendant attests that he would never have acceded to offering the plea if that were not the case. Indeed, it was not the case. Pursuant to Immigration and Nationality Act §§ 212 (a) (2) (8 USC § 1182) and 237 (a) (2) (8 USC § 1227), a conviction for the type of offense to which defendant pleaded guilty (Penal Law § 220.03) rendered defendant subject to removal in any removal proceeding, and subject to inadmission, as well, by congressional mandate. Furthermore, by congressional mandate, pursuant to INA § 240A (8 USC § 1229b [d] [1]), defendant was rendered ineligible for the discretionary accommodation of cancellation of removal because, at the time he pleaded guilty, as defendant’s counsel *1093 posits several times, defendant had not resided continuously in the United States for seven years.[4]
[5]Defendant submits, with palpable appeal, that his prior counsel’s alleged affirmative misadvice regarding the immigration consequences of this class A misdemeanor criminal guilty plea forms the basis to vacate that plea and resultant conviction.[6]
In his affidavit, defendant attests that his 1998 attorney informed him that he “would be eligible for relief from removal if removal proceedings were ever initiated against” him. Defendant further states that “[h]ad [he] known” that he would have “no relief from removal proceedings,” he “would never have agreed to” plead guilty, as he did. Notably, defendant’s counsel affirms that he has contacted defendant’s prior counsel and provided prior counsel with a copy of the defendant’s instant motion, seeking prior counsel’s cooperation on this motion in corroboration of defendant’s affidavit testimony regarding the alleged professional error of prior counsel on July 16, 1998. Defense counsel further affirms that his attempts to secure prior counsel’s cooperation, both via telephone and mail, to receive a corroborating affidavit or affirmation, or any other response, from prior counsel, have gone completely and utterly ignored.
An evidentiary hearing on a motion to vacate a judgment of conviction is appropriate when the defendant comes forward with allegations that raise a triable issue of fact sufficient to challenge the presumed validity of a judgment of conviction (People v Session, 34 NY2d 254 [1974]; People v Bacchi, 186 AD2d 663 [2d Dept 1992], lv denied 81 NY2d 760 [1992], habeas corpus denied 884 F Supp 724 [ED NY 1995], affd 101 F3d 683 [2d Cir 1996], cert denied 519 US 894 [1996]). A CPL 440.10 motion furnishes the procedural context within which an aggrieved defendant can present “nonrecord” material facts that could entitle him to vacatur relief (People v Satterfield, 66 NY2d *1094 796, 799 [1985]). On a CPL 440.10 motion, “a hearing is required where facts outside the record are material and would entitle a defendant to relief” (People v Hennessey, 111 AD3d 1166, 1168 [3d Dept 2013]). As concluded below, the court finds that such facts have been amply proffered by defendant on this motion, by his sworn affidavit, and by his attorney’s affirmation, and by the record in the underlying case, warranting an evidentiary hearing on the material question whether his prior counsel misadvised him as to immigration consequences, or not. This is especially so in light of his present counsel’s affirmation of his unsuccessful attempts to secure a corroborating affidavit or affirmation, or other response, from defendant’s prior counsel — thereby impeding defendant’s ability to acquire independent, corroborating evidence at the briefing stage of this motion. Absent compulsory process, which only an evidentiary hearing can provide, this court is obstructed from determining what, if anything, defendant was advised or misadvised of, preparatory to entering his plea of guilty to class A misdemeanor criminal possession of a controlled substance. This problem is magnified when we take express note of defendant’s codefendant’s plea of guilty to a mere violation of disorderly conduct, carrying with it no immigration consequences, and on the exact same allegations found in the criminal complaint vis-a-vis both defendants. Nothing in the complaint indicates any added culpability on defendant’s part as compared with that alleged against codefendant Leonardo.[6]
Ineffective Assistance of Counsel
“The right to the effective assistance of counsel is guaranteed by both the Federal and State Constitutions (US Const, 6th Amend; NY Const, art I, § 6). What constitutes effective assistance is not and cannot be fixed with yardstick precision, but varies according to the unique circumstances of each representation” (People v Baldi, 54 NY2d 137, 146 [1981]). A defendant adequately shows ineffective assistance of counsel when “there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial” (People v McDonald, 1 NY3d 109, 115 [2003] [citation omitted]).
Defendant attests that he would not have pleaded guilty to the class A misdemeanor criminal charge of Penal Law § 220.03 *1095 had he known the true, adverse immigration consequences of the plea (see Padilla v Kentucky, 559 US 356, 373 [2010] [the “severity of deportation — ‘the equivalent of banishment or exile,’ ” is significant to “the negotiation of a plea bargain” and to “the Sixth Amendment right to effective assistance of counsel”] [citations omitted]). In addition, defendant’s counsel observes that the People’s case was not very compelling, in that neither drugs nor buy money were found on defendant’s person when he was arrested. Indeed, defendant’s codefendant, charged in the very same complaint to be functioning as defendant’s mirror-image — to wit, as the alleged seller vis-a-vis defendant’s alleged status as a buyer — pleaded guilty to the mere violation of Penal Law § 240.20, disorderly conduct, bearing no immigration consequence. This is pointed out by defendant’s counsel as possible further evidence that the People’s case was not very strong. Thus, the foregoing evidentiary realities of what appeared to be a weak case, taken together with prior counsel’s alleged affirmative misadvice concerning the immigration consequences of a plea to the class A misdemeanor, give rise to the reasonable probability that, but for prior counsel’s alleged error(s),[7] defendant would have elected to go to trial, as defendant attests on this motion (but without the benefit of corroborating, independent evidence from his prior counsel, despite his current counsel’s multiple efforts to secure same).
Prior Counsel’s Alleged Deficient Performance
Prior to (and after) defendant’s guilty-plea conviction, the Court of Appeals provided guidance on the issue of affirmative misadvice of the immigration consequences of a plea, taking care to point out that federal courts held that “affirmative misstatements by defense counsel” constitute ineffective assistance of counsel (People v Ford, 86 NY2d 397, 405 [1995]).[8]
In the present case, defendant attests that his prior counsel misadvised him that he would be eligible for relief from *1096 removal if removal proceedings were ever initiated against him, despite a plea of guilty to class A misdemeanor criminal possession of a controlled substance. Defendant further attests that he would never had offered such a plea if he knew of the error of such misadvice. Defendant’s counsel has affirmed that earnest efforts were expended by him to secure the cooperation of defendant’s prior counsel in providing independent, corroborating support for defendant’s motion, to no avail. In that vein, defendant has provided the transcript of the court proceedings from July 16, 1998, the day he pleaded guilty to Penal Law § 220.03. The transcript indicates that when defendant’s prior attorney was informed of the People’s “offer of 220.30 and time served,” said attorney asked for a subsequent call, after which defendant accepted the offer and entered the plea (defendant’s exhibit C). That circumstance reasonably implies that prior counsel afforded himself an opportunity to *1097 discuss the offered plea with defendant while off the record. The open factual issue now is: what advice or misadvice, if any, was conveyed by prior counsel during that off the record discussion? In other words, defendant has made a sufficient showing that there appear to be “nonrecord” material facts that could entitle defendant to relief (Satterfield; see also Hennessey), especially in light of the qualitative disparity between defendant’s and his codefendant’s pleas, and involving a complaint alleging equivalent levels of alleged culpability on both defendants’ parts, and considering all other points noted hereinabove, most notably, the alleged immigration misadvice. Therefore, a hearing is warranted on the question of precisely what advice or misadvice, if any, defendant was given regarding the immigration consequences of pleading guilty to Penal Law § 220.03. Such a hearing will provide an effective evidentiary forum for the ascertainment of facts material and necessary to a final disposition of this motion, facilitated by the instrument of compulsory process that only such a hearing can provide. This is especially so, in light of defendant’s prior counsel’s refusal to voluntarily appear with relevant evidence on the material issue of whether misadvice occurred, or not (per defense counsel’s affirmation).
Defendant should not be disadvantaged at the briefing stage by his inability to secure independent corroboration from his prior counsel on a voluntary basis. The People should not be heard to assert what would be a bootstrap argument of lack of independent corroboration in a case such as this, where defendant’s counsel affirms to making several attempts to obtain such evidence without the benefit of compulsory process, without success. As the Court of Appeals declared in People v Peque (22 NY3d 168, 184 [2013], cert denied sub nom. Thomas v New York, 574 US —, 135 S Ct 90 [2014]):
“To ensure that a criminal defendant receives due process before pleading guilty and surrendering his or her most fundamental liberties to the State, a trial court bears the responsibility to confirm that the defendant’s plea is knowing, intelligent and voluntary. In particular, it 'must be clear that the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.’ ” (Citations omitted.)
Based on the observations discussed hereinabove, defendant has earned the right to be afforded the procedural vehicle by *1098 which to secure, at a bare minimum, an opportunity to adduce the evidence he attests exists, and that he has been helpless, thus far, to obtain.
Conclusion
Upon the submissions in support of, and in opposition to, the instant motion; and upon all prior proceedings had herein, as reflected in the record of this case, it is hereby ordered that defendant’s motion to vacate his judgment of conviction upon his plea of guilty occurring July 16, 1998, is granted to the extent that an evidentiary hearing is to be held in the Criminal Court of the City of New York, County of New York.

. The criminal complaint, dated May 8, 1998, charged defendant and a codefendant, Pedro Leonardo (docket No. 98N042943), with Penal Law § 220.39 (1), criminal sale of a controlled substance in the third degree — a class B felony.

. Defendant is represented by different counsel on this motion.

. The notice to appear for removal proceedings came in the aftermath of defendant’s return to the country on September 7, 2012, disembarking at John F. Kennedy International Airport in New York City from a trip abroad (see defendant’s exhibit C). Defendant submits indicia on this motion that he provides financial and familial support to his American-born grandson, and that defendant’s domestic partner of 11 years lives together with defendant in this country. Defendant submits numerous corroborating statements from acquaintances and from his employer, which include positive character references.

. The People have not disputed defense counsel’s repeated assertion that defendant hadn’t met the seven-year continuous residency threshold as of the date of his plea (thereby precluding cancellation of removal). To the extent the People (or the defense) wish to expound on this particular factual point, they are free to do so at the evidentiary hearing ordered hereinbelow.

. To the extent, if any, that further clarification is necessary at this point, the court emphasizes that this case alleges active misinformation by counsel of immigration consequences; not to be confused with the more frequently asserted, passive, scenario of wow-information by counsel of immigration consequences altogether. As will be discussed, the pertinent case law applicable at the time of the plea, treated the two scenarios differently.

. The complaint alleges that defendant proffered money to Leonardo as an exchange for the acquisition of the controlled substance. In other words, defendant was an alleged buyer, and Leonardo was the alleged seller.

. Multiple errors by counsel contribute cumulatively to a finding of ineffective assistance (People v Droz, 39 NY2d 457 [1976]).

. The Court of Appeals’ 1995 policy regarding affirmative immigration misadvice of counsel, enunciated in Ford, was expressly and directly reaffirmed by the Court in People v McDonald (1 NY3d 109, 115 [2003]), holding that such affirmative misadvice “falls below an objective standard of reasonableness.” Such was, therefore, the applicable and governing law of our state at the time of the relevant 1998 events underlying this motion. (See also People v Baret, 23 NY3d 777, 785 [2014] [expressly acknowledging the Ford/ McDonald policy of this state that “inaccurate advice about a guilty plea’s *1096 immigration consequences constituted ineffective assistance under the Federal Constitution”], cert denied 574 US —, 135 S Ct 961 [2015].)
The court takes note of the post -Ford I McDonald pronouncement in Padilla v Kentucky (559 US 356 [2010]), which, like Ford/McDonald, held affirmative immigration misadvice to constitute ineffectiveness (and adding to that, immigration non-advice), and further takes note of Baret’s limitation of that federal holding to prospective, and not retroactive, application to CPL 440.10 proceedings. To be clear though, this court is not premising its determination on a retroactive application of Padilla-, but rather, distinctly on its direct application of Ford /McDonald to the contemporary time period during which this state’s ineffectiveness-of-counsel doctrines were informed by those Court of Appeals decisions. “[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel’s challenged conduct on the facts of the particular case, viewed as of the time of counsel’s conduct” (Strickland v Washington, 466 US 668, 690 [1984] [emphasis added] [acknowledged by the People in their papers submitted in opposition to this motion (People’s mem, dated May 8, 2015, at 9)], reh denied 467 US 1267 [1984]). At the time defendant pleaded guilty, the Court of Appeals’ statement in Ford, reaffirmed later by McDonald (and as acknowledged later by Baret), provided this state’s governing guidance as to counsel’s responsibility regarding the immigration consequences of a guilty plea. At that time, non-advice regarding immigration consequences was not deemed ineffective, whereas misadvice was. Relatedly, the Appellate Division, First Department, expressly understands that any claim of immigration misadvice in this state, whether arising pre- or post -Padilla, “does not depend on Padilla” nor on any attempt to apply Padilla retroactively (which Baret precludes), making reference instead to McDonald as the standard bearer in this state for cases alleging “inaccurate advice about the immigration consequences of [a] plea” (People v Melo-Cordero, 123 AD3d 595, 595 [1st Dept 2014] [emphasis added]). Consonantly, insofar as Baret stated that “Padilla flatly contradicted and supplanted Ford’s holding” (23 NY3d at 799), it is clear from the context of that statement that the Court was referring to the non-advice scenario — the underlying fact pattern of that case — and not the misadvice scenario.